J-S85031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J.D., JR, a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: I.C.M., Mother | : | No. 1830 EDA 2016 |

Appeal from the Order May 9, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division No(s): CP-51-AP-0000706-2013,
CP-51-DP-0000691-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J.D., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: I.C.M., Mother | : | |
| | : | No. 1831 EDA 2016 |

Appeal from the Order May 9, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division No(s): CP-51-AP-0000705-2013,
CP-51-DP-0000690-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: S.J.Q.M., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: I.C.M., Mother | : | No. 1832 EDA 2016 |

Appeal from the Order May 9, 2016
in the Court of Common Pleas of Philadelphia County,
Family Court Division No(s): CP-51-AP-0000707-2013,
CP-51-DP-0052618-2010

J-S85031-16

BEFORE: PANELLA, RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED January 20, 2017**

I.C.M. ("Mother") appeals from the Orders, entered on May 9, 2016, terminating her parental rights to D.J.D., Jr. (DOB 6/14/11), D.J.D. (DOB 6/14/11), and S.J.Q.M. (DOB 3/11/09) (collectively "Children"), and changing their permanency goals to adoption.[1] Additionally, Mother's court-appointed counsel, Gary S. Server, Esquire ("Attorney Server"), has filed a Motion to Withdraw as counsel and an accompanying brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967) (hereinafter "*Anders* Brief"). We affirm the trial court's termination Orders and grant Attorney Server's Motion to Withdraw.

In its Opinion, the trial court set forth the relevant factual and procedural history of this case, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 7/8/16, at 1-3 (unnumbered).

On June 5, 2016, Mother filed Notices of Appeal of the termination Orders, as well as Concise Statements of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court thereafter issued an Opinion pursuant to Pa.R.A.P. 1925(a)(2)(i). On September 7, 2016, Attorney Server filed a Motion to Withdraw as counsel, as well as an *Anders* Brief.

---

[1] On July 20, 2016, this Court, *sua sponte*, consolidated Mother's appeals from the termination Orders.

- 2 -

In the **Anders** Brief, Attorney Server raises the following issues for our review:

1. Whether[,] under the Juvenile Act, 42 Pa.C.S.A. [§] 6351, and 55 Pa. Code [§] 3130.74, in accordance with the provisions of the federal Adoption and Safe Families Act, 42 U.S.C. [§] 671[,] *et seq*. ["ASFA"], reasonable efforts were made to reunite [] Mother with [] Child[ren?]

2. [W]hether the goal change[] to adoption was the disposition best[-]suited to the safety, protection and physical, mental and moral welfare of [] Children[?]

3. Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under [23 Pa.C.S.A. §] 2511(a) [and] (b) [?]

**Anders** Brief at 6 (numbering added, claims separated to conform to arguments set forth in brief, capitalization omitted).  Mother neither filed a *pro se* brief, nor retained alternate counsel for this appeal.

When counsel files an **Anders** brief, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014).  This Court has extended the **Anders** principles to appeals involving the termination of parental rights. **See In re V.E**., 611 A.2d 1267, 1275 (Pa. Super. 1992).  In these cases, counsel appointed to represent an indigent parent, on a first appeal from a decree involuntarily terminating parental rights, may petition this Court for leave to withdraw representation and submit an **Anders** brief.  **See In re S.M.B**., 856 A.2d 1235, 1237 (Pa. Super. 2004).  We review counsel's **Anders** brief for compliance with the requirements set forth by our Supreme

- 3 -

Court in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), wherein

the Court held that

> in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id**. at 361.

> Additionally, pursuant to **Commonwealth v. Millisock**, 873 A.2d 748 (Pa. Super. 2005) and its progeny, [c]ounsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief.

**Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal

quotation marks and citation omitted). Once counsel has satisfied the above

requirements, it is then this Court's duty to conduct its own review of the

trial court's proceedings and render an independent judgment as to whether

the appeal is, in fact, wholly frivolous. **See In re X.J.**, 105 A.3d at 4.

Here, Attorney Server has complied with each of the requirements of

**Anders**. Attorney Server indicates that he conscientiously examined the

record and determined that an appeal would be frivolous. Further, Attorney

Server's **Anders** Brief comports with the requirements set forth by the

Supreme Court of Pennsylvania in **Santiago**. Finally, the record contains a copy of the letter that Attorney Server sent to Mother, advising her of her right to proceed *pro se* or retain alternate counsel and file additional claims, and stating Attorney Server's intention to seek permission to withdraw. Accordingly, Attorney Server has complied with the procedural requirements for withdrawing from representation, and we will review Mother's claims.

In her first claim, Mother contends that the Department of Human Services ("DHS") did not make reasonable efforts to reunite Mother and Children, and "simply paid lip service to helping her obtain adequate mental health and drug and alcohol treatment." **Anders** Brief at 18. Mother asserts that "DHS and the Clinical Evaluation Unit ("CUA") did not give her the necessary paperwork until the 'last minute[,]' and that she was not properly referred." **Id**. Based on these averments, Mother claims that the SHS and CUA violated the Juvenile Act and AFSA.[2] **Id**.

However, Attorney Server points out that this argument is rendered frivolous by the Supreme Court of Pennsylvania's holding, in **In re D.C.D.**, 105 A.3d 662, 673-74 (Pa. 2014), that it is unnecessary to demonstrate that an agency has made reasonable efforts to reunite a parent with her child before the parent's rights may be terminated. **Anders** Brief at 18. Attorney

---

[2] Citing to 42 U.S.C. § 675(1)(B), Attorney Server asserts that AFSA "requires that a social service agency formulate a plan for assuring that the child receives safe and proper care and that services are provided to the parents." **Anders** Brief at 18-19.

- 5 -

Server further indicates that, even if Mother could present such a claim, it would be rendered frivolous by the evidence of record, which demonstrates that, since 2009, DHS has implemented in-home protective services ("IHPS"), and has made every effort to keep Children with Mother. *Id*. at 19. Attorney Server states that "[M]other was provided with competent social workers and Family Service Plans that offered her a path to reunification and with all of the referrals and services necessary to achieving it. It was Mother's inability over the course of seven years to completely avail herself of the services that were offered that thwarted the attempt to reunify this family." *Id*.

Initially, we observe that, as Attorney Server correctly points out, the Juvenile Act does not require a showing of reasonable efforts in order to terminate parental rights. *See In re D.C.D.*, 105 A.3d at 673-74 (Pa. 2014).[3] Specifically, our Supreme Court has held that,

> while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) [of the Juvenile Act] forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent.

---

[3] Although Attorney Server suggests that there may be a question as to whether Pennsylvania state law is in conflict with federal law, he fails to identify the particular conflict, or cite to any legal authority in support of such argument. *See* Pa.R.A.P. 2119(a) (stating that the parties' briefs must include a discussion of each question raised on appeal and a "citation of authorities as are deemed pertinent."). Nevertheless, our independent research reveals no legal authority supporting such a claim.

*Id.* at 675. Thus, we conclude that Mother's first claim is frivolous.[4]

As Mother's second and third claims are related, we will address them together. In her second claim, Mother contends that the change in Children's permanency goal to adoption "was not the disposition best-suited to the safety, protection and physical, mental and moral welfare of [Children]." ***Anders*** Brief at 19. Mother asserts that, during the hearing, she "claimed to have fulfilled some of her objectives[,] and denied that she had received the necessary referrals for the services she needed." ***Id***. Mother further asserts that she has "a strong bond to [C]hildren[,] which was demonstrated by the attention she lavished on them during the visits[,] and by the affection they showed to her during her visits." ***Id***. Mother also argues that "she was on the verge of obtaining stable housing[,] and that she was ready to assume her parental responsibilities." ***Id***. at 19-20.

However, Attorney Server points out that "Mother[,] throughout the case[,] refused to accept completely the services that could have been provided to her … services that were designed to keep her free of drugs, to keep her mentally healthy, and to keep [C]ildren in a safe home …." ***Id***. at 20. Attorney Server further indicates that "because [M]other had been given repeated opportunities to complete her objectives[,] and she had shown repeatedly that she would not or could not[,] [DHS] was able to

---

[4] Even if we had not deemed Mother's first claim to be frivolous, we would have determined that the evidence of record demonstrates that DHS made reasonable efforts to reunify Mother with Children. ***See*** Trial Court Opinion, 7/8/16, at 4, 5 (unnumbered).

prove" that "[t]he deplorable history of [M]other's refusing to fully accept services demonstrated clearly and convincingly that a goal change to adoption in a loving and tolerant family setting would be the disposition best suited to the safety, protection and physical, mental and moral welfare of [C]hildren." *Id*. at 20, 21.

In her third claim, Mother contends that DHS failed to prove by clear and convincing evidence that her parental rights to Children should be terminated under sections 2511(a)(1), (2), (5), (8) and (b). *Anders* Brief at 21. Mother asserts that she believes that she fulfilled all of her objectives and that she is capable of providing her children with the essential parental care, control and subsistence necessary for their physical and mental well-being. *Id*. at 23-24. Mother claims that the conditions and causes which led to her incapacity, abuse, neglect or refusal had been remedied within the time allotted by the Adoption Act. *Id*. at 24. Mother argues that Children would be better off with her, and that "she is best suited to provide for the developmental, physical and emotional needs and welfare of Children." *Id*.

However, Attorney Server contends that Mother's third claim is frivolous because she refused or was unable to achieve stability for herself or for Children. *Id*. Attorney Server points out that Mother periodically tested positive for marijuana, engaged in violence, got arrested, and disappeared for a period of time. *Id*. Attorney Server asserts that, despite being diagnosed with bi-polar disorder and depression, Mother "refused to

avail herself of the necessary evaluations and referrals for services." *Id*. Attorney Server claims that "[Mother's] stubbornness in not cooperating with DHS caused [C]hildren to be without the essential parental care, control or subsistence necessary for their physical and mental well[-]being." *Id*. at 25. Attorney Server argues that "the conditions that led to [Mother's] incapacity, abuse and neglect could not be remedied [] due to her refusal to accept responsibility for the causes of the estrangement from [C]hildren, her refusal to meaningfully participate in therapy[,] and her failure to complete all of the objectives formulated by DHS to accomplish a successful reunification." *Id*. Attorney Server contends that "the evidence showed that [C]hildren had been in placement for many years, [] they had no real bond with [M]other, … and that they would not be harmed in any way by terminating [Mother's] parental rights." *Id*.

The trial court set forth the relevant law, addressed Mother's second and third claims, and concluded that they lack merit. *See* Trial Court Opinion, 7/8/16, at 3-7 (unnumbered). We agree with the reasoning of the trial court and affirm on this basis as to Mother's second and third claims. *See id*.

Based on the foregoing, we conclude that Mother's appeal is frivolous, and that Attorney Server is entitled to withdraw as counsel. Further, our review discloses no other claims of arguable merit. Thus, we grant Attorney Server's Motion to Withdraw and affirm the trial court's Orders terminating

Mother's parental rights to Children, and changing their permanency goals to adoption.

Motion to Withdraw granted; Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2017

IN THE COURT OF COMMON PLEAS

FOR THE COUNTY OF PHILADELPHIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: S.M. | : | CP-51-DP-0052618-2010 |
| | : | CP-51-AP-0000707-2013 |
| IN RE: D.D. | : | CP-51-DP-0000690-2012 |
| | : | CP-51-AP-0000705-2013 |
| IN RE: D.J.D. | : | CP-51-DP-0000691-2012 |
| | : | CP-51-AP-0000706-2013 |
| | : | |
| APPEAL OF: I.M., Mother | : | 1832 EDA 2016 |
| | : | 1831 EDA 2016 |
| | : | 1830 EDA 2016 |

OPINION

**Irvine, J.**

This appeal arises from this Court's order on May 9, 2016 terminating the parental rights of ▇▇▇ ▇▇▇("Mother"). The mother's parental rights were terminated pursuant to the petition filed on behalf of the Department of Human Services (DHS) by the City of Philadelphia Solicitor's Office.

Gary S. Server, counsel for mother, filed a timely appeal from the May 9, 2016 order terminating her parental rights with attached Concise Statements of Errors, Affidavits of Service, and other related documents necessary to perfect these appeals.

**Factual and Procedural Background**

A summary of the relevant procedural history is set forth as follows:

The children were born as follows: S.M. on March 11, 2009, D.D. and D.J.D. on June 14, 2011.

On March 11, 2009, DHS learned that the mother, I.M., tested positive for marijuana while giving birth to the child, S.M. The mother's date of birth is July 31, 1992. S.M. was born healthy with no medical concerns. The Child Abuse Prevention and Treatment Act (CAPTA) made contact with the mother. The mother agreed to accept services.

On December 8, 2009, DHS received a General Protective Services (GPS) report alleging that the mother's siblings were involved in a fatal car accident. The maternal grandmother tested positive for Phencyclidine (PCP) and marijuana at the time of the accident. The report was substantiated.

On December 9, 2009, the maternal grandmother returned to her home. The mother and the child, S.M. remained in the care of the maternal grandmother.

On February 5, 2010, DHS implemented In-Home Protective Services (IHPS) in the family's home.

On February 16, 2010, DHS learned that the mother and the child, S.M., were residing in the home without adult supervision. The maternal grandmother was arrested as a result of the fatal car accident.

On February 21, 2010, L.M., S.M.'s, maternal great-grandmother moved into the home to help care for the mother and the child, S.M.

On May 4, 2010, DHS was informed that a violent incident occurred in the family home whereby the maternal great-grandmother was stabbed in the leg. The mother instructed the maternal great-grandmother to leave the home. DHS visited the home and informed the mother that she and the child, S.M. could not remain in the home without appropriated adult supervision.

On May 4, 2010, DHS obtained an Order of Protective Custody (OPC) for the mother and the child, S.M. DHS placed the mother and the child in a foster home.

On June 15, 2011, DHS received a GPS report alleging that the mother, I.M. had tested positive for marijuana at the time of delivery of the children, D.D. and D.J.D. The report further alleged that D.D. and D.J.D. were neglected by the mother due to inappropriate supervision and diminished capacity. The mother did not have the necessary supplies to care for D.D. and D.J.D. Furthermore, the mother was diagnosed with bipolar disorder and depression. Moreover, the mother did not receive mental health treatment. The child, S.M. was residing with the mother. The report was substantiated.

On July 26, 2011, DHS held a Family Service Plan (FSP) meeting. The FSP goals for the mother included, 1) maintain appropriate housing, 2) complete mental health treatment, and 3) complete drug and alcohol treatment. The mother was present at the meeting and signed the FSP.

The family was transient from December 2011 until April 2012. The family moved three times due to evictions and disobeying residential/house rules.

On April 25, 2012, DHS obtained an OPC for D.D. and D.J.D. The whereabouts of the mother were unknown. D.D. and D.J.D. were placed in foster care.

On April 27, 2012, DHS received a GPS report alleging that the mother had contacted S.D.'s paternal family requesting that she needs help with the child. The report further alleged that S.D. had hygiene issues and had not eaten in at least one day.

A shelter care hearing regarding D.D. and D.J.D. was held on April 27, 2012 before the Honorable Jonathan Q. Irvine. Judge Irvine lifted the OPC and ordered the temporary commitment of D.D. and D.J.D. to the care and custody of DHS.

On May 3, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated D.D. and D.J.D. dependent and committed them to the care and custody of DHS.

On May 31, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated S.M. dependent and committed him to the care and custody of DHS.

The matter was listed on a regular basis before Judges of the Philadelphia Court of Common Pleas – Family Court Division – Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of the children.

In subsequent hearings, the DRO's reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On May 9, 2016, a Termination of Parental Rights hearing for the mother, I.M., was held in this matter. The Court found by clear and convincing evidence that mother's parental rights of S.M., D.D. and D.J.D., should be terminated pursuant to the Pennsylvania Juvenile Act.

The instant timely appeals of the mother follows.


**Discussion:**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S.A. §2511. In the present case, mother's parental rights were terminated based on §2511(a) (1), (2), (5) and (8) and §2511(b).

§2511(a) provides that parental rights may be terminated based on any one of the grounds enumerated therein:

> General rule- the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

In proceedings to involuntary terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)

Under Pennsylvania law, to satisfy section 2511 (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super, 2002).

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the child. The court found by clear and convincing evidence that mother refused or failed to perform her parental duties.

In the instant case, the mother did not complete all of her Family Service Plan (FSP) goals. The Community Umbrella Agency (CUA) social worker identified the mother's FSP objectives as: 1) obtain appropriate housing, 2) attend mental health treatment, 3) attend drug and alcohol treatment, and 4) maintain her visits with the children (N.T., 5-9-16, p.13). The mother did not obtain appropriate housing (N.T., 5-9-16, p. 16). Furthermore, the mother did not complete mental health treatment (N.T., 5-9-16, p. 15). Moreover, the mother did not complete drug and alcohol treatment (N.T., 5-9-16, p. 14). Lastly, the mother did not visit consistently with the children (N.T., 5-9-16, p. 17).

A parent has an affirmative obligation to act in his child's best interest. In reference to parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate a willingness and capacity to undertake the parental role". *In re D.J.S.*, 737 A2d 283,286 (1999) (quoting *In re Adoption of Hamilton*, 379 Pa.Super. 274, 549 A.2d 1291, 1295 (1988)).

In the instant matter, the children, S.M., D.D. and D.J.D., have been in placement care for approximately four years. The testimony established that termination of the mother's parental rights is in the best interest of the children (N.T., 5-9-16, pgs. 21-23).

Section 2511 (a) (2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S.A. §2511 (a) (2).

Courts have further held that the implications of a parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) (2). *In the matter of B.L.W.,* 843 A.2d 380 (Pa. Super. 2004), the Court's grave concerns about Mother's ability to provide the level of protection, security and stability" that her child needed was sufficient to warrant termination. Id. at 388

Termination of parental rights under §2511(a)(2) is not limited to affirmative misconduct but may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.,* 797 A.2d326, 337 (Pa. Super.2002).

In the instant case, the mother did not have appropriate housing. The mother did not comply with the CUA social worker's attempts to assist with housing (N.T., 5-9-16, p. 26). Furthermore, the previous DHS social worker testified that he referred the mother several times for drug and alcohol treatment and mental health treatment (N.T., 5-9-16, pgs. 40-42). Additionally, the mother testified that she was aware that she needed to attend mental health treatment (N.T., 5-9-16, p. 37). Moreover, the CUA social worker testified that the mother's visits changed from unsupervised to supervised because she did not complete her mental health and drug and alcohol treatment. (N.T., 5-9-16, p. 17). Lastly, the mother did not visit consistently with the children. She missed ten of the last fifteen visits with the children (N.T., 5-9-16, p.17). The testimony indicated that the time of the visits were changed to accommodate the mother's schedule. Subsequently, the mother missed three of four visits offered at the new time (N.T., 5-9-16, p. 25). The mother testified regarding the visits "If I can't make it, then I can't. I don't have an excuse. I have other children. I mean they live – it's 45 – 60 minutes away from me" (N.T., 5-9-16, p. 38).

§2511(a) (5) requires that:

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

§2511(a) (8) states:

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S.A. §2511(b);

*In re Bowman,* 436 Pa. Super. 647 A.2d 217 (1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights to determine if the evidence in light of the totality of the circumstances clearly warrants involuntary termination.

When determining the best interest of a child, many factors are to be analyzed, "such as love, comfort, security and stability. *In re Adoption of T.B.B.,* 787 A.2d 1007, 1013-1014 (Pa. Super. 2003). Another factor that a court is to consider is what, if any bond exists for the child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.,* 839 A.2d 410,415 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa. C.S.A §2511(a). Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511 (a). *In the Interest of B.C.,* 36 A.3d 601 (Pa. Super. 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511 (a), it must then engage in an analysis of the best interest of the child under Section 2511(b). *See id.*

Pursuant to Section 2511 (b), the trial court must take in account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In Re C.S.,* 761 A.2d 1197, 1202 (Pa. Super. 2000).

In the instant matter, the testimony indicated that S.M. is placed in a pre-adoptive home. He has a parent/child relationship with his foster mother, the paternal grandmother (N.T., 5-9-16, p. 19). "He identifies her as mom." (N.T., 5-9-16, p.18). S.M.'s interactions with the paternal grandmother are loving, caring and bonded. He looks to her for love, comfort, care and support. He does not look to the mother for love, comfort care and support (N.T., 5-9-16, p. 19). The paternal grandmother meets all of his needs (N.T., 5-9-16, pgs. 19-20). The testimony further indicated that D.D. and D.J.D. are placed together in a pre-adoptive home. They share a parent/child relationship with their foster parent. They look to the foster parent for love, comfort care and support. Additionally, the CUA worker testified that there is no evidence that D.D. and D.J.D. share a significant or necessary parental bond with the mother (N.T., 5-9-16, pgs. 21-23). Furthermore, all three children would not suffer permanent emotional harm if the parental rights of the mother were terminated (N.T., 5-9-16, pgs. 20, and 21-23). Lastly, it would be in the best interest of the children if the mother's parental rights were terminated and the goal was changed to adoption (N.T., 5-9-16, pgs. 21-23).

In the instant case, DHS filed the petitions to terminate the parental rights of the mother, I.M., and change the goal to adoption. "In those cases where reunification is not appropriate, adoption is viewed as providing the greatest degree of permanence" *In re S.H.,* 71 A3d 973, 978 (Pa. Super. 2013).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) & (b) (N.T., 5-9-16, pgs. 48-49).

**Conclusion:**

Accordingly, the Trial Court's Decree entered on May 9, 2016 terminating the parental rights of I.M. should properly be affirmed.

By the Court

_____ J.